The next case in the docket is 523-0331 Hudson v. Basler. Please introduce your name to the firms that we know from the record. Thank you. May it please the court. Your honors, my name is Adam Johnson. I represent the defendant appellant Jerry Basler and I'm from the Lewis-Brisbois law firm. There is one point before the court today whether the jury verdict in the underlying case should be set aside on the grounds that it is irreconcilably inconsistent and that the jury awarded some medical bills but did not issue an award for pain and suffering or for loss of normal life. The court should reinstate the jury verdict because there were facts within the record that explain the jury's verdict including that first that plaintiff had only non-compensable pain and suffering, second that the jury had real questions as to the credibility of the plaintiff in testifying about the symptoms, and third that there were numerous other unrelated conditions including rheumatoid arthritis, carpal tunnel that the plaintiff did not have compensable neck pain or other compensable non-economic damages. The standard of review that applies to the point on appeal is de novo. I would refer the court to the Illinois Supreme Court case of Redmond v. Socha which is referred to in the briefs. In that case the standard of review was contested and the Illinois Supreme Court held that because there is no discretion involved in determining whether a verdict is inconsistent that the appropriate standard of review is de novo and the trial court is in no better position than a court of review in assessing that issue. The Illinois Supreme Court repeated that conclusion that the appropriate standard of review is de novo more recently in 2022 in the McQueen case. The plaintiff cites and refers this court to case Hassard v. D.S. Realty for the proposition that the appropriate standard of review should be abuse of discretion. I would refer this court to paragraph 35 of the Hassard case which states that the court reviews de novo a claim that a jury verdict is irreconcilably inconsistent so we would ask that the court review the underlying trial court decision de novo. Turning to the merits of the dispute the rules are clear for how this claim is reviewed and that all reasonable inferences are resolved in favor of upholding the jury verdict. All disputed facts are resolved in favor of upholding that and then the court attempts to construct any reasonable hypothesis that would explain how the jury could have found what it found. In this case as I said the outset there are numerous reasons that could explain the jury's decision to award some but not all medical bills but not award any compensable pain and suffering and loss of normal life. There were multiple unrelated conditions that were the subject of expert testimony that Dr. Taylor said explained any pain symptoms that the plaintiff reported. The plaintiff complained of pain immediately before the accident and Dr. Taylor testified that the symptoms that plaintiff reported after the accident were consistent with if not identical to the symptoms that she reported after the accident. Plaintiff's credibility was directly challenged early and often in the case and in closing argument we read a list of the inconsistencies and the problems with plaintiff's testimony calling into question the veracity and credibility of the plaintiff on her seminal Illinois case that court held that it is not necessarily inconsistent for a court or a jury to find that some pain related expenses were awarded but to find that the pain that the plaintiff may have experienced just didn't rise to the level of being something worthy of awarding money. In this case I think that we should separate loss of normal life and pain and suffering. The there's another reason to sustain and uphold the jury's verdict for loss of normal life. The jury found and defendant argued that plaintiff if she had an injury it was for a very finite period of time and the jury's award reflects that it agreed with that conclusion. The evidence at trial about loss of normal life was how plaintiff's life changed right now at the time of trial whether she could walk her dog or play basketball when the case was going to trial. There was no evidence or no substantial evidence about any activities that she missed out on in the weeks and months that represent the time period where the jury may have thought that she sustained any injury at all. So in addition to all the reasons why it's permissible for the jury to find that there was no compensable loss of normal life during the time period where the jury actually thought the plaintiff may have had an injury there simply wasn't any evidence that she had specific activities that she missed out on in terms of loss of normal life. That's one of the reasons in closing I directly ask the jury to award zero for a loss of normal life because there simply wasn't evidence from which the current the jury could have found that plaintiff had compensable loss of normal life during that time period. Pain and suffering is a little bit different. The analysis is I think more complicated. I think the best way to approach it in following the orders that are given in the Redmond case of constructing a reasonable hypothesis is to compare the jury's award of medical bills against the medical bill list that the plaintiff asked the jury to award and that the jury took into its deliberations which is plaintiff's exhibit C. Plaintiff asked the jury to award $125,000, $100,000 and the jury ordered roughly half of that. But the reasonable hypothesis here I think the most reasonable one is that the jury more or less ordered those medical bills in chronological order beginning with the date of the accident and they thought that plaintiff recovered at some period of time. And if you compare the amount that the jury awarded against exhibit C the list of medical bills and the dates that they occurred on what comes clear at least to me I think is that the jury cut plaintiff off at the end of her physical therapy and they notably left out some important bills that I think tell us a great deal about how the jury weighed the evidence. If you award the initial ER bill, the primary care visits after the accident, diagnostic care, physical therapy and nothing else you come up with just about exactly to the dollar the amount that the jury awarded and that would take us from the time of the accident until March of 2020. But to make those work then the jury would have excluded other records which the jury had very good reason to exclude in which tell us that the jury had serious questions about whether the plaintiff had any pain. The jury excluded a second ER bill week after the accident that Dr. Taylor said was not related to the accident not necessary. The jury excluded the Bandicart testified that plaintiff was going to have ongoing problems and need a surgery that the jury didn't award and the jury certainly heard evidence that Dr. Bandicart gave 13 different diagnoses for Ms. Hudson and at the time of trial didn't know what was wrong with her so I think it makes sense given that they rejected his opinions on causation and damages that they didn't award his bills. But most importantly I think is the fact that the jury did not award pain injections in February of 2020. I think that is akin to a special interrogatory here the numbers don't work. We don't know judge and there's no way to know I think that's a fair point but the legal standard is to create a reasonable hypothesis by definition that means that we have to look at what the jury awarded and the facts in front of the jury and try to come up with how the jury could have arrived at its decision and there may be other ways to look at the evidence too but removing the pain injections is entirely consistent with a determination that the plaintiff didn't have significant pain or that the jury thought that any pain that plaintiff did have was caused not by the car accident but by one of these other medical conditions that she was experiencing at the exact same time. It was the lack of pain argued to the jury judge that it could have been related to another cause. Absolutely judge and there was also evidence in front of the jury in the form of Dr. Taylor and Dr. Bandekar. Dr. Bandekar and Dr. Taylor both testified that plaintiff had specific objective signs of rheumatoid arthritis including a particular subluxation in the cervical spine that was Dr. Bandekar's one of his current theories at the time of trial that this had nothing to do with the accident but it was caused by rheumatoid arthritis and Dr. Taylor testified that plaintiff symptoms were consistent with rheumatoid arthritis so another condition that explained all her pain that had nothing to do with the car accident. Dr. Taylor testified that plaintiff had carpal tunnel syndrome which he described as a very real condition in which had nothing to do with the car accident. It was argued through those experts and again at closing that one plaintiff was not being straight with the jury about whether she had compensable pain and two that if she did have this pain it was more likely coming from either one of these other comorbidities the rheumatoid arthritis or the carpal tunnel syndrome that we know that plaintiff had and that we know were unrelated. In addition it was argued that not only did plaintiff have nearly identical symptoms before the accident but that she wasn't honest with us about those symptoms. She denied them in their deposition which the jury can take into account both in considering that she had those symptoms and can weigh it against her credibility and that also the jury can consider that this was a continuation of the same injury. That's the exact analysis that the Illinois Supreme Court took into account in the Snover case where that plaintiff testified that she had very similar when we have these issues of conflict these other conditions that are at play when those things are contested we only have one way to resolve those disputes and that is to ask the jury which one of these things do you think is causing the pain and do you think that the pain is compensable. In addition that's not exactly what Snover said. The Snover case did not say that jury is the only arbiter of the fact. It talked about objective versus subjective symptomology didn't it? Well judge that is part of the analysis. One of the things that the Snover court said that the trial court should do is understand the distinction between subjective symptomology and objective symptoms. It also contained language saying that we have to treat this as a practical matter and that only juries can tell us how much injuries are valued and it questioned the credibility of the plaintiff in that case. One of the things that the Supreme Court specifically mentioned was that the credibility of the plaintiff was an issue in that case that needed to be resolved by the jury given the gap in treatment. I'm sorry we're also supposed to give great deference to the trial court in this case who got to hear the witnesses and decide whether the verdict was consistent or inconsistent with the evidence true? Not true judge I disagree with that because the standard of review the standard of excuse me we don't give deference to the trial court. Do you review de novo the question in front of this court? That's the standard of review. I certainly think that you should respect Judge Gaffanet but I don't think you should defer in any way to Judge Gaffanet's assessment of any of the evidence for this particular issue. To the extent the the court does look to the determinations made by Judge Gaffanet I would tell you that the the hearing transcript from the hearing on the post-judgment motion reveals that Judge Gaffanet's assessment was that the that he did not recall any of the evidence that we cited in our brief that there were times where plaintiff experienced minimal pain and that's just not consistent with the evidence in the record and I would note that Judge Gaffanet didn't have the benefit of a trial transcript at the time of that hearing but there was substantial evidence that Ms. Hudson didn't experience any compensable pain and suffering. She testified on direct that she had severe symptoms 10 out of 10 pain at times and the jury heard records uh saying that she told Dr. Bandekar that when she overdid it she had tingling and numbness and that her pain was on and off and that physical therapy she had good days and bad days and those weren't things that Judge Gaffanet considered instead his assessment was excuse me isn't tingling an objective sign no tingling is someone saying that they're experiencing a symptom an objective sign let me ask you about Stamp versus Sylvan doesn't that case say that it's important to keep in mind the presiding judge in passing upon the motion for a new trial has the benefit of his previous observation of the appearance of the witness their manner and testifying of the circumstances aiding in the determination of credibility it does judge and I think the important distinction between that case and this one is that the issue before the court in the stamps case was a manifest weight challenge so the judge is reviewed for abuse of discretion under that very different issue but that's not the issue in front of the court today Judge Gaffanet had before him two issues one whether the verdict should be set aside as irreconcilably inconsistent and two whether the verdict was against the manifest weight and you can see that in the lost wages portion of Judge Gaffanet's opinion he first deals with inconsistency as lost wages and says they weren't inconsistent and then moves on to manifest way with the non-economic damages pain and suffering and loss of normal life that decision was made based on inconsistence there was no for manifest way I would agree with you that if the ruling from the trial court had been that Judge Gaffanet thought the jury's award or lack of an award of non-economic damages was against the weight of the evidence then the then there would be a different standard of review that would be reviewed for an abuse of discretion and the court would consider that Judge Gaffanet was in a different position in this court to do things like weigh the evidence but I do think it comes out the same way one of the things that I think is important is that in each of these cases these zero dollar cases where there is a dispute as to the credibility of the plaintiff and when there is evidence of other causes other traumas other medical conditions that in all of those cases including in Snover and the DeFranco case the reviewing courts have upheld the verdict because they have said that when there are those disputes created it's for the jury to resolve justices I see my time is over I'll have the opportunity to discuss and rebuttal if there are no further questions no further questions I don't have no questions thank you thank you happily good morning may it please the court Mr. Johnson my name is Courtney Hughes I'm with the Hughes law firm in Carbondale and I represented Aaron Hudson at trial and I'm going to argue on behalf of the appellee here this morning I'd like to address two points if I could this morning briefly the standard of review since that's already been mentioned and secondly whether the trial court correctly determined that there was objective evidence of injury and pain and in this particular case we have an experienced trial judge Judge Jeff Goffinette of the Williamson County Circuit Court who granted Aaron Hudson a new trial on damages and this court ought to affirm Judge Goffinette's ordering. Judge Goffinette directed a finding of injury during this trial I've tried over 100 jury trials and I've been able to convince a trial judge to direct the finding of injury on less than five times that's how convincing the evidence of injury was in this particular case in this particular case the jury awarded Aaron $72,000 in medical expenses I filed a post-trial motion we then had a hearing and Judge Goffinette in his order and that's found at C1140 of the record he basically indicated that the parties agree that the trial court was to determine if the verdict was inconsistent and or against the manifest weight of the evidence and then he wrote in his order he said Mr. Hughes on behalf of Aaron Hudson says I should answer both those questions yes Mr. Johnson on behalf of Mr. Bowser said I should answer both those questions no and I believe what he did a fair reading of the order he sort of split the baby he said based upon my review of the evidence in this case and he sat through every witness read every evidence deposition ruled on every evidence deposition objection heard opening statement heard closing arguments directed a finding of injury he determined that awarding $72,000 in past and future medical expenses to Aaron Hudson based on the totality of the evidence that he heard was inconsistent and not awarding her pain and suffering and or loss of normal life but he then went on to address the lost wages in this order he said that when I review the evidence on the lost wage claim I find that the evidence of lost wage that the jury award zero for was not against the manifest way of the evidence so Mr. Hughes you don't get a new trial on the lost wage claim so he was reviewing the evidence from both an inconsistency aspect and also against the manifest weight of the evidence your honors I believe a fair reading of the order reveals that implicit in the order the trial court determined that the jury's verdict of zero dollars for pain and suffering and zero dollars for loss of normal life was not only inconsistent but also against the manifest weight of the evidence therefore the standard of review is an abuse of discretion not de novo if a jury verdict is inconsistent the trial court has no discretion but to order a new trial and damages if the issue is the manifest weight of the evidence then the standard of review of the appellate court is again abuse of discretion I submit Judge Dauphinette did not abuse his discretion he sat in judgment of this case he heard all the evidence he accepted all the witness testimony he ruled all the objections and he determined that this jury's award of zero dollars pain and suffering loss in normal life was was against the manifest weight of the evidence so let me address that if I could initially uh Justice Cates mentioned the Stamp versus Sylvan case that's found by the way at page 28 of my brief your honors I respectfully suggest that that case is directly on point all four corners on point in Stamp versus Sylvan which by the way cited with authority this court's decision in Murray versus Philpott which is 1999 decision uh new trial and damages in Stamp versus Sylvan that's a soft tissue injury case there's no herniated disc there's no pain injections in that case soft tissue injury case six months of soft tissue injury treatment the jury awarded the plaintiff in that case four thousand three hundred forty eight dollars but zero dollars for pain and suffering for six months of pain and suffering and that went up on appeal in the first district held that's an abuse of discretion clearly the jury awarded the plaintiff over four thousand dollars for medical bills which included treatment for pain and suffering and yet awarded zero dollars for pain and suffering new trial on damages first district versus Sylvan it's important to note when you read Mr. Bowser's brief and you just heard Mr. Johnson's argument this argument is fiction it's important to note the trial court never made a finding that the award of seventy two thousand dollars in medical bills was for past medical treatment the trial court never made a finding that the medical bills of seventy two thousand dollars was only up to March of 2020. Didn't the verdict form say past day and future? Exactly the itemized verdict form said past and future medical bills of seventy two thousand dollars judge that was so important that judge Goffinette specifically pointed that out in his order that this fiction of Mr. Bowser that if you take exhibit c which is the plaintiff's medical bill exhibit and and what what Mr. Bowser is trying to do is well let's pick in shoes let's cherry pick what we think the medical bills were that the jury awarded and then we will try and defend the verdict that way judge Goffinette correctly pointed out you can't do that the line item said past and future medical bills seventy two thousand dollars the line item said past and future physical pain and mental suffering zero the line item said past and future loss of normal life zero dollars the trial court also never made a finding and this is in Mr. Bowser's brief that the medical bill award was strictly for diagnostic care and not palliative care in other words testing care not actually to make Erin Hudson feel better or to resolve her pain this is the fiction of Mr. Bowser to try and defend the verdict the trial court set that aside in this case your honors if Mr. Bowser wanted to test the jury's verdict obviously before it was awarded you would ask the jury for a special interrogatory that wasn't done in this case you would line item out past medical bills and future medical bills that wasn't done in this let me we're arguing here oral argument so let's let's accept the fiction arguendo that seventy two thousand dollars was for past medical bills and if we look at that fiction we find out there's fallacy in it in that if you do the math which I actually did and you add up the medical bills from the first ER visit Erin had to March of 2020 or last PT visit that is not a mathematician but I do have a calculator seventy three thousand three hundred and forty seven dollars and thirty nine cents Mr. Bowser says well wait maybe the jury didn't award Erin the second ER visit which was one thousand fifteen dollars and fifty four cents are we at seventy two thousand no we're not at seventy two thousand dollars there either the math doesn't add up the evidence doesn't add up either almost devoid in Mr. Bowser's brief and in oral argument this this woman was in a car accident they said it wasn't her it wasn't the defendant's fault he lost they said that she was fifty percent or less a fall they tagged her with thirty five percent comparative fall they said she wasn't injured she got a seventy two thousand dollar medical bill verdict now they say well she wasn't she didn't suffer any pain and suffering let's test that is there any objective evidence that she had pain and suffering she had two emergency room visits the first one within 48 hours of the crash I got that evidence in through their expert Dr. Taylor I cross-examined their expert Dr. Taylor on the emergency room treatment he was not at me actually worse than that judge it was a records review he never even examined her they just sent him a thousand pages of her medical records but included the ER visits and what did he say he said that Erin's complaints of headache pain neck pain and low back pain in the first emergency room visit were all car crash related that's at C-136-137 of the record he testified that the ER physician's finding of muscle spasms in Erin's neck in the ER was objective evidence of injury that's at C-138 page 93 line 16 to 17 he admitted that the emergency room's physician injection of Toradol into Erin's body for her pain and his prescription of Valium in the emergency room were related to car accident yet the jury awarded her zero dollars for pain and suffering he deferred to the emergency room professionals note on that first ER visit where Erin reported she had 8-9 out of 10 pain in the emergency room after the car accident this is the first ER visit yet the jury awarded zero for pain and suffering she followed up with a primary care physician Dr. Bryant first diagnosis and a consistent diagnosis throughout was neck pain neck pain and she referred Erin for physical therapy for neck pain yet the jury awarded zero dollars for pain and suffering Erin went to physical therapy at Heartland Regional Medical Center in Marion Illinois dozens of times tens of thousands of dollars in physical therapy which Vassar contends is part of the $72,000 verdict is that the same hospital where she did the two ER visits yes sir it is correct she had physical therapy there through March of 2020 on a July 2019 accident she had treatment for her neck pain range of motion weakness etc awarded by the jury under Basler's argument yet zero dollars for pain and suffering on set 92619 within two months of the crash Erin follows up with her primary care doctor she's not getting any better Dr. Bryant then orders what's called an MRI scan very fancy x-ray of the neck see if there's a disc injury or disc involvement she orders the MRI because Erin still got neck pain and then she orders Erin to go to Dr. Bandekar who's Dr. Bandekar he's a pain management expert and an orthopedic surgeon she orders Erin to go for pain management in the time frame that they say is covered by the medical bills and yet the jury awards zero dollars for pain she has the MRI the MRI is then followed up with a visit with Dr. Bryant and Dr. Bryant then refines her diagnosis to cervical disc disorder and an abnormality in Erin's neck that it's at c14 of the record objective evidence of injury cervical disc disorder on an MRI scan muscle spasms found by a medical professional in the emergency room neck pain diagnosis after limited range of motion from Dr. Bryant physical therapy for months and months within the time paradox Mr. Bazar argues that the cervical epidural steroid injection costs were not covered by the jury verdict again a fiction they come up with to try and defend the verdict but let's say they're right arguendo the paradox and irony is the jury awarded Erin medical bills for Dr. Bryant's history and physical approving of the injection but then didn't award the injection bills doesn't make any sense these are the facts that Judge Goffinette considered in the post-trial motion he considered the fact that Dr. Taylor the records review expert hired by the defense literally told the jury that the palpable knots in Erin's neck on September 18, 2019 were related to the crash in physical therapy but then seven days later on September 25, 2019 when she had the same palpable knots in her neck found by the same physical therapist were not related to the crash because he had this arbitrary eight-week cutoff date for her injury he said eight weeks after the crash she's done she's cured she's no medical bills are related to that no injuries related crash they argued in closing argument that the bills she should get were fourteen thousand eight hundred sixty six dollars I'll wrap up I apologize I got a little excited there you're honest it's very simple uh this is an abuse of discretion standard and this is a case where Judge Goffinette sat in judgment of this case he heard all the evidence accepted all the testimony in his good judgment he determined that Erin Hudson was entitled to new trial and damages and you should affirm that award for that court thank you any questions judge no thank you thank you thank you may please the court judges on the standard of review issue you know I read Judge Goffinette's order differently about whether he reviewed for manifest way if he did he cited the wrong law because under section a of his opinion he cites the Redmond case for the applicable legal standard that he's applying to the question of whether the verdict is inconsistent that is not a case about manifest way for the lost wages argument that I heard Mr. Hughes makes the court does a two-part analysis it has a paragraph on whether lost wages are inconsistent it finds that it's not and then there's a second different paragraph where the court reviews it for lost wages are he doesn't combine them into one mixed question of both of those points he deals with them separately so to me the record is clear that this that Judge Goffinette's ruling on non-economic damages was solely on inconsistency and that he didn't reach the issue of manifest way I heard mentioned this idea that we it's unknowable what the medical bills were that jury awarded and we should consider that the verdict form included past and future medical bills which it did because that's what the IPI tells us that we're supposed to do but I don't think it's a very reasonable hypothesis to think that the jury thought no medical care anywhere near the time of the accident was related but seventy two thousand dollars for a future surgery which doesn't even match the cost of the future surgery is all they related so yes I think there's a way that you can look at the medical bills and invent a reason why they don't make sense it's just that's the opposite of the legal standard the legal standard here is to construe those facts in a way that do make sense and explore whether there's a reasonable hypothesis the medical bills that we explained that I outlined originally those come to seventy two thousand dollars three hundred eighty eight dollars and eighty five cents would the slight impact have anything to do with the reasonable hypothesis I think so judge and the way I think it comes into play is that it goes to credibility Ms. Hudson asked for three quarters of a million dollars and the jury saw time after time again the photos showing that there was no impact discernible on any of these vehicles and the jury also heard Mr. Hughes ask the doctors and evidence depositions isn't it possible that a terrible violent crash can cause neck injury and then they heard him get up an opening and say no one's going to say this is a particularly violent impact and then they heard my opening asking the jury to make note of the fact that when they listen to the evidence depositions Mr. Hughes is going to characterize that impact with the doctors to get him to give the causation testimony very differently from what he just told you an opening statement so I also think the fact that Ms. Hudson accepted no responsibility for I think those facts relate to the nature extent and duration of the injury the peach case tells us that jurors are entitled to look at photographs and decide for themselves irrespective of expert testimony whether they think that the impact that occurred likely matches the symptoms that the plaintiff reported I would take issue with this idea that the physical therapy awarded has to equal you know compensable pain and suffering and loss of normal life I would refer the court to pages 58 and 59 it's supporting record Dr. Bandekar says that the reason physical therapy was important for Ms. Hudson was for neck mobilization for neck strengthening and for relaxation techniques that is not the same thing as saying that Ms. Hudson had terrible violent pain and only physical therapy could cure it according to the spinal surgeon the reason she was going there were for neck mobilization for loss of range of motion which is what Dr. Bryant found slight reductions in range of motion in those initial visits I would also take issue with the idea that there was objective evidence of injury or that Dr. Taylor conceded that that's not at all what happened Dr. Taylor said that the MRI that Mr. Hughes brought up showed no evidence of any impact or injury whatsoever he also testified that a nerve conduction study multiple nerve induction studies proved that Ms. Hudson didn't have any ridiculous symptoms or other injury caused by the accident but they did prove that she had symptomatic carpal tunnel at the exact same time that was producing the symptoms that she saw here regarding the ER bills Dr. Taylor testified I agree that this record represents that this physician is saying that they saw these things in these appointments Dr. Taylor did not get up and testify I agreed that plaintiff had compensable pain and suffering I agree that she had these objective symptoms or objective issues the last thing I would say judges is that my time is up and I've asked the court to uh to reverse and reinstate the jury verdict unless there are any questions from the panel I have no questions counsel do you have any questions one question Mr. Johnson did the judge direct the finding of injury he did judge and we oppose that on the record for the the same reasons that we're stating here that we think that that's uh evidence that the jury needed to consider and I'll also note that the judge did my question I appreciate it thank you thank you judge thank you thank you your honor